

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GSG
F.#2004R01264

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

*Mailing Address:*   147 Pierrepont Street
Brooklyn, New York  11201

January 12, 2007

By ECF and Hand Delivery

Honorable Charles P. Sifton
Senior United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Steven Wise
          Criminal Docket No. 04-069 (CPS)

Dear Judge Sifton:

    The government submits this letter in response to the defendant Steven Wise's January 8, 2007 sentencing submission. Specifically, this letter responds to Wise's arguments concerning: (1) the advisory Guidelines range that is applicable in this case; (2) the Government's withdrawal of the 5K1.1 motion that it previously submitted on Wise's behalf; and (3) Wise's motion for a downward departure based on his contention that the Guidelines overstate the seriousness of his conduct and based on his diminished capacity.

I.    PRELIMINARY STATEMENT

    As Wise plainly acknowledges, this case has truly had a "tortured history." (Wise 1/8/07 Submission at 1). What Wise fails to recognize, however, is that the this tortured history is entirely attributable to his continued criminal conduct and his repeated attempts to avoid accepting responsibility for that conduct. Indeed, Wise's arguments concerning sentencing have been inconsistent, at best. At first, Wise acknowledged his guilt, agreed to proceed with sentencing, and seemingly indicated that he would accept any sentence imposed by the Court that took into consideration the government's 5K1.1 motion. Following the government's withdrawal of that 5K1.1 motion due to the Wise's continued criminal conduct, Wise claimed, for the first time, that he was mentally incompetent at the time he pleaded guilty

and that he is, in fact, factually innocent of the crimes to which he pleaded guilty. After the Court denied Wise's transparent motion to withdraw his guilty plea, Wise now asserts that he has accepted responsibility for his criminal conduct throughout this case, that he did not obstruct justice by, among other things, tipping off witnesses against whom he was cooperating, and that he is deserving of a reduced sentence based on his "mental infirmities." Against this tortured history, the only consistency in this case is Wise's criminal conduct: Wise engaged in fraudulent conduct prior to his arrest in this case and after it. In fact, Wise engaged in numerous instances of criminal conduct in connection with his work for Global ATM, while awaiting sentencing in this case.

For the reasons set forth herein as well as in the government's prior sentencing submissions, the government respectfully submits that Wise should be sentenced to a substantial term of imprisonment consistent with the applicable Sentencing Guidelines range, the severity of his crimes, his continued criminal activity, and his continued denial of core aspects of his offense conduct.

II. <u>The Advisory Guidelines Range</u>

    A. <u>Loss and Number of Victims</u>

As an initial matter, Wise argues that there were no victims in this case that suffered any economic loss. (<u>See</u> Wise 1/8/07 Submission at 5-7). In support of his motion, Wise offers the expert report and conclusions of Dr. Ronald Filante, who essentially opines "that because [Marx Toys'] stock price fluctuated as a natural consequence of press releases issued by Marx, <u>which were largely true</u>, and those issued by UIT, which were both false and in violation of an injunction, and UIT's short selling, Mr. Wise was not responsible for any actual loss and therefore there were no 'victims,' let alone more than 250 of them." (Wise 1/8/07 Submission at 6 (emphasis added)).

Dr. Filante's entire argument is premised on the fact that the Marx Toys' press releases issued by Wise were "largely true," which they were not. Wise has admitted as much to the government over the course of numerous proffer sessions.

2

For example, on June 14, 2004, Wise met with the government, with his attorney Joseph V. Sorrentino, Esq. present, and revealed, among other things, the following:

- Around July 31, 2003, Wise and Vindman put out a misleading press release regarding Aztor Corporation, a company working on developing software that could be used by America On-Line. This press release was put out solely to assist Vindman in moving large positions of Marx Toys' stock. ThIS press release falsely stated that Marx Toys was acquiring Aztor Corporation, when in actuality all Marx Toys had done was promise to pay Aztor Corporation 1.5 million dollars when Marx Toys could do so.

- On August 4, 2003, Wise and Vindman put out a false press release that stated that Marx Toys had a new "robotic toy line" in development, when, in fact, the new "robotic toy line" was IM Buddies and that deal had been canceled.

- On August 15, 2003, Wise and Vindman created a press release that falsely stated that Marx Toys had "sales exceeding" one million units, when, in fact, there were no such sales.

If necessary, the government is prepared to present testimony concerning the above statements, among others, made by Wise during various proffer sessions concerning the false press releases he issued about Marx Toys. Clearly, Dr. Filante's conclusions, which were based on press releases that he believed were "largely true," cannot be given any serious weight considering Wise's own admissions concerning the patent falsity of many of these releases.

On the other hand, as stated in the government's prior submissions, the conclusions on loss reached by Peter Melley of the NASD are conservative, and clearly establish that the loss in this case exceeded over $2 million dollars and over 250 victims.

B.  <u>Obstruction of Justice</u>

The defendant also objects to any increase based on U.S.S.G. § 3C1.1 for obstruction of justice, arguing that any obstructive conduct on his part was not willful given his mental infirmities; was unrelated to the instant offense; and was immaterial. (Wise 1/8/07 Submission at 7-9). Wise's arguments are entirely without merit.

With respect to the wilfulness of his conduct, Wise once again relies on the various reports generated by his retained doctors and psychiatrists. In response to these reports and Wise's repeated arguments concerning his mental infirmities which are also raised by him in several other areas discussed below, the government respectfully refers the Court to the report submitted by Dr. Barry Rosenfeld. Dr. Rosenfeld concluded, among other things, that not only was Wise's plea in this case made knowingly and intelligently, but that there was also evidence that Wise was deliberately exaggerating his condition. Moreover, it is a far stretch to conclude that Wise's purported mental health issues rendered him unable to tell right from wrong or incompetent as defense counsel would have the Court now believe. As Dr. Rosenfeld concluded, Wise was competent to proceed then at his plea, as he is now. Moreover, as detailed in the government's prior submissions to the Court, some of Wise's post-plea criminal conduct was captured on tape. Wise's behavior on these tapes clearly indicates that he was aware of what he was doing when he was doing it.

With respect to Wise's arguments that his misdeeds were unrelated to this offense and were immaterial, nothing could be further from the truth. First, Wise's conduct rendered him an unsuitable government witness for the Vindman trial, thereby undermining that prosecution. Second, several of Wise's co-conspirators have informed the government that it was widely known, due to Wise's own statements to them and others, that Wise was cooperating with the government when he met with them. As a result, those co-conspirators refrained from making any incriminating statements in Wise's presence. Third, that Wise's conduct obstructed justice in this case is made clear by the effect it has had on the sentencing proceedings in this matter.

C.   Acceptance of Responsibility

Rather surprisingly, Wise argues in his most recent submission that he is deserving of a reduction for acceptance for responsibility. (Wise 1/8/07 Submission at 10). Wise's latest arguments in this regard are not deserving of any further response and have been fully addressed in the government's December 29, 2006 submission and will not be repeated here.

4

III. The Defendant's Downward Departure Motions

    A.   The Government Was Entitled to Withdraw the 5K1.1 Motion In Light of Wise's Criminal Conduct

       As an initial matter, the government was well within its rights to withdraw the 5K1.1 motion that it filed on Wise's behalf. The Second Circuit has made plain that where, as here, "the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance" so long as the government's decision to do so is reasonable and made in good faith. United States v. Rexach, 896 F.2d 710, 713 (2d Cir. 1990); see also United States v. Gregory, 245 F.3d 160, 164 (2d Cir. 2001).

       For example, in Gregory, the defendant violated the terms of his cooperation agreement with the government by being arrested for other criminal activity. There, the Court found that the defendant's re-arrest alone was sufficient justification for the government to void its cooperation agreement with the defendant. See Gregory, 245 F.3d at 160. Here, Wise's conduct was far more egregious than the conduct of the defendant in Gregory. Wise not only engaged in multiple criminal acts after entering into his agreement with the government, but he also lied to the government when confronted with evidence of this new criminal conduct. Indeed, Wise made multiple false statements to FBI agents in this case, which resulted in his re-arrest on February 23, 2006. Moreover, he potentially jeopardized the government's prosecution of several other individuals by divulging his cooperation while he was actively cooperating with the government. Under the circumstances, the government's determination that Wise had breached his obligations under the cooperation agreement was extremely reasonable and in good faith. The government, therefore, was justified in withdrawing Wise's 5k1.1 letter.

       Moreover, Wise does not argue, nor can he, that the government's decision was insupportable or in bad-faith. (See Wise 1/8/07 Submission at 11-12). Rather, Wise asserts that the 5K1.1 motion cannot be withdrawn because to do so would be unfair in light of Wise's mental infirmities. (See id.). That is not the test and Wise offers no authority in support his position. Furthermore, the issue of Wise's mental infirmities has been thoroughly addressed in the parties' various submissions to the Court. Based on those submissions, it cannot be said that Wise's mental infirmities render him incompetent. Indeed, there are numerous people who suffer from the same conditions as Wise and

5

do not resort to a life of complex crimes to support themselves. Accordingly, Wise's argument must fail. In any event, the government has elsewhere conceded that Wise's mental and physical infirmities merit a modest departure.

    B.    The Guidelines Do Not Overstate the Seriousness of the Offense

Wise's once again asserts that a downward departure is appropriate here because the Guidelines overstate the seriousness of the instant offense. (Wise Submission at 13-14). The government has previously addressed this argument in its' December 29, 2006 submission.

    C.    Wise's Request for a Downward Departure Should Be Denied Because Wise Does Not Qualify Under the Guidelines for Diminished Capacity

Wise argues that the Court should downwardly depart from the Guidelines range because he suffers from diminished mental capacity, including being diagnosed with, among other things, Attention Deficit/Hyperactivity Disorder ("ADHD") and Bipolar Disorder I. (See Wise 1/8/07 Submission at 14-16).

Under the Guidelines, a downward departure for diminished capacity may be warranted if, among other things, "the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. As explained in the commentary, a "significantly reduced mental capacity" means that the defendant either cannot "understand the wrongfulness of his behavior . . . or exercise the power of reason" or that the defendant cannot control behavior that he knows is wrongful. Id. comm., n.1.

Here, Wise's argument fails on all of those grounds. First, there is no evidence that he has substantially diminished capacity as defined by the Guidelines. Many people suffer from ADHD and Bipolar Disorder, yet do not lead criminal lives. There is no indication that Wise cannot tell right from wrong or exercise the power of reason. To the contrary, the facts of this case and the complexity of the securities fraud schemes in which Wise was involved suggest that he fully understood the wrongfulness of his behavior. One example among many was Wise's use of nominee accounts. Indeed, Wise held a large portion of his Marx Toys' shares in several nominee accounts to conceal the true nature of his holdings from potential investors. In addition, Wise used nominees to conceal his payments to Vindman and Vindman's network of investors. In fact, Wise has admitted

to the government on multiple occassions that he used a nominee called "Shia Holdings" to give Vindman and his network of investors free-trading shares of Marx Toys' stock. In return, Wise gave Shia Holdings restricted shares to replace those free trading shares. According to Wise, he provided Vindman 3.5 million free trading shares of Marx Toys' stock in this manner. Wise acted in this manner to conceal conduct, which he clearly appreciated to be illegal.

Further evidence that Wise does not have substantially reduced mental capacity is provided by his behavior during his numerous proffer sessions with the government and in the consensual recordings that Wise made during the period of his cooperation with the government: Wise had no difficulty acknowledging his criminal conduct, explaining it to the government, and engaging in conversations regarding it with his co-conspirators.

Second, there is no evidence that the defendant's mental capacity -- diminished or otherwise -- "contributed substantially to the commitment of the offense." U.S.S.G. § 5K2.13. Thus, the government respectfully submits, there is no basis for the Court to downwardly depart due to diminished capacity.

However, even if there were a basis, the Guidelines prohibit departure if, among other things, (1) the facts or circumstances of the offense "indicate a need to protect the public because the offense involved . . . a serious threat of violence" or (2) "the defendant's criminal history indicates a need to incarcerate the defendant to protect the public[.]" Id. The latter factor is present here. Given Wise's continuing criminal conduct following his arrest in this case, the circumstances of the offense and Wise's criminal history reveal a recidivist criminal prone to engaging in fraudulent conduct, which strongly indicates the need to incarcerate him to protect the public. Thus, the government respectfully submits that, under any analysis, a downward departure for diminished capacity is unavailable in this case under the Guidelines.

IV.  CONCLUSION

For the reasons set forth above as well as in the government's prior sentencing submissions, the government respectfully submits that Wise should be sentenced to a substantial term of imprisonment consistent with the applicable

Sentencing Guidelines range, the severity of his crimes, his continued criminal activity, and his continued denial of core aspects of his offense conduct.

                                            Respectfully submitted,

                                            ROSLYNN R. MAUSKOPF
                                            UNITED STATES ATTORNEY

                                 BY: _____
                                            Gurbir S. Grewal
                                            Assistant U.S. Attorney
                                            (718) 254-6296

cc:   Joseph Sorrentino, Esq.
     (by fax ((718) 720-5009))
     James Branden, Esq.
     (by fax ((212) 286-0495))
     Cheryl Fiorillo, U.S. Probation (by Hand)